MUELLER and another, Respondents, vs. SILVER FLEET TRUCKING COMPANY and another, Appellants.*

*March 8—April 12, 1949.*

---

* Motion for rehearing denied, with $25 costs, on June 7, 1949.

460

462

For the appellants there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, and oral argument by *Suel O. Arnold*.

For the respondents there was a brief by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen*.

ROSENBERRY, C. J.    Defendants contend that the evidence is not sufficient to sustain the jury's finding as to the negligence of the driver of the truck.    We have carefully reviewed the evidence and are of the opinion that the evidence was sufficient to sustain the jury's findings.    Kagel knew that Mueller was on the inside of the hopper room.    He knew that the grates were not intended to hold a weight of eleven and a quarter tons; he had carefully avoided backing the truck onto the grates on previous deliveries and was well acquainted with the entire situation.    Some attempt is made to excuse Kagel on the ground of play in the differential.    There was nothing to indicate to Mueller that Kagel could not stop the truck on this occasion as he had on previous occasions. Kagel, on the other hand, was aware of the defect, if any, and if Mueller was running any risk because of it he should have warned Mueller.    We conclude that the jury could properly find from the evidence that Kagel was not in the exercise of ordinary care under the circumstances.

During the course of his examination Kagel was asked the following questions:

"*Q*. Now, in the backing-up process you alone control the truck, don't you?    *A*. I did.

"*Q*. Nobody else had control of your truck.    You had full control?    *A*. This man Mueller told me he would place the block."

He had testified in response to a previous question that Mueller had blocked the truck at the time of a former delivery

after the truck had stopped. The trial court sustained an objection to a question by which the defendants sought to bring out the entire conversation between Kagel and Mueller. There was no offer of proof and there is nothing to indicate whether the evidence excluded would have been material. It is considered that in sustaining the objection no prejudicial error was committed.

It is next contended that the jury was not properly instructed. The following instruction is complained of:

"In determining your answer to this question you will consider the nature and construction of the grates over the coal hopper, the weight of the truck, together with the load of coal contained in it; the condition and position of the grates as the driver backed his truck upon the grates; the fact that the truck driver intended to back his truck only up to the grates and not on them; and the further fact as to whether or not he ought to have anticipated in the exercise of ordinary care that by backing his truck upon the grates there was any danger of disturbing the position of the grates and also the position of the truck if the position of the grates should be disturbed."

The language complained of is as follows: "the fact that the truck driver intended to back his truck only up to the grates and not on them."

The fact that Kagel on previous occasions had not backed the truck onto the grates and did not intend to do so this time was certainly a fact to be considered in determining whether he was negligent. It is considered that the instruction, taken as an entirety, was proper.

On behalf of defendants it is further contended that the jury assessed a grossly disproportionate amount of negligence against the defendants. The jury found the deceased negligent in placing himself in the position he was when he was killed, and found that his negligence was ten per cent of the negligence which caused his death. The position of the de-

ceased before the accident and the place where his body was found after the accident establishes the fact that he was in a safe place and not in a place of danger had the truck stopped where the driver intended to stop it and where trucks had been stopped on prior occasions.

The place where Mueller was standing became a place of danger due solely to the negligence of the truck driver. It does not appear from the record that the deceased consciously placed himself in a place known to be dangerous. We hold the proportion of negligence attributable to Mueller, as found by the jury, cannot be disturbed.

On a motion to review, the plaintiffs seek to have the judgment modified by changing the words and figures "thirteen thousand six hundred eighty ($13,680) dollars" therein to "fifteen thousand two hundred ($15,200) dollars," and by changing the figures "$13,933.14" to "$15,453.14." This motion raises a question which is, so far as we are aware, one of first impression. The jury apportioned the negligence ninety per cent to the driver of the truck and ten per cent to the deceased, Elmer H. Mueller, and assessed damages as follows:

(a) For burial expenses of the deceased Elmer H. Mueller, by the court, $200.

(b) For the pecuniary loss sustained by the plaintiff because of the death of her husband, $35,000.

(c) For the loss of the society and companionship of her husband, $5,000.

The jury did not complete the verdict as required by sec. 331.045, Stats., which provides:

"Contributory. negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, *but any*

damages allowed shall be diminished by the jury in the propor-
tion to the amount of negligence attributable to the person re-
covering."

The court did not instruct the jury to diminish the amount
found as the plaintiff's damages by the proportion of negli-
gence attributable to the person recovering, and from observa-
tion of many records brought to this court in comparative-
negligence cases it is apparent that this is the common practice
of trial courts.

Trial courts do not instruct the jury with respect to the
amount which the damages allowed the plaintiff shall be
diminished in proportion to the amount of negligence at-
tributable to the plaintiff, or in death cases with respect to the
limitation provided for in sec. 331.04, Stats., because it would
inform the jury with respect to the result of their verdict and
therefore, under the rulings of this court, might be erroneous.
*Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 288
N. W. 803.

If the trial courts give no instruction with regard to the
completion of the verdict, and upon the basis of the facts found
by the jury make the necessary mathematical computation, the
result is nevertheless the verdict of the jury.

The statute provides that the damages allowed shall be
diminished by the jury in proportion to the amount of negli-
gence attributable to the person recovering. "Damages al-
lowed" are clearly the total amount found by the jury to be
the damage sustained by the plaintiff. This is the amount
to be diminished by the jury in proportion to the amount of
negligence attributable to the plaintiff. Here the jury al-
lowed the plaintiff damages in the total amount of $40,200.
This amount under the finding of the jury·should be dimin-
ished by ten per cent. This leaves a remainder of $36,180,
which is the amount which the plaintiff would be entitled to
recover if it were not for the provisions of sec. 331.04, Stats.
In accordance with the provisions of that section the plaintiff

cannot have judgment for damages in an amount in excess of $15,000. Therefore the judgment must be for that amount plus the costs.

In this case the jury found that the pecuniary loss of the plaintiff was $35,000, loss for society and companionship, $5,000, plus $200 funeral expenses. The trial court reduced this amount to $15,200 and then applied the proportion of the amount of negligence attributable to the plaintiff, which was ten per cent, leaving the net amount of damages recoverable by the plaintiff as $13,680.

This holding was clearly erroneous. Sec. 331.045, Stats., explicitly provides that any "damages allowed" shall be diminished *by the jury* in the proportion to the amount of negligence attributable to the person recovering. There is nowhere in the statutes any authority for diminishing the amount specified in sec. 331.04 (1) and (2).

Sec. 331.04 (1) (a), (2), Stats., provides:

". . . and in every such action the jury may give such damages, not exceeding $12,500, as they may deem fair and just in reference to the pecuniary injury, resulting from such death to the relatives of the deceased specified in this section; . . .

"(2) In addition to the benefits provided for in subsection (1), a sum not exceeding $2,500 for loss of society and companionship shall accrue to the parent or parents or husband or wife of the deceased."

It is argued that this provision requires the trial court to reduce the amount of damages found by the jury to $15,000 before it is diminished in proportion to the amount of negligence attributable to the plaintiff.

This provision has been dealt with by the court in a number of cases. In *Cameron v. Union Automobile Ins. Co.* (1933), 210 Wis. 659, 668, 246 N. W. 420, 247 N. W. 453, which was a case which involved comparative negligence in which a widow was suing to recover damages for the death of her husband, the court said:

"The amount named in the statute [sec. 331.04 (2)] is not to be considered as indicating that $2,500 is adequate compensation for every or any loss of the kind that may be suffered, but as merely limiting the amount recoverable. The statute formerly made $5,000 *the limit of recovery* in any case of death by wrongful act. Sec. 4256, R. S. 1878. It is manifest that this amount was not considered by the legislature as adequate compensation for the pecuniary loss sustained through the death of a young husband whose annual earnings were many times that amount. The statute here involved like that of 1878 is considered, not a measure of compensation, *but a limit to recovery.*" Cited with approval in *Erikson v. Wisconsin Hydro-Electric Co.* (1934), 214 Wis. 614, 254 N. W. 106.

In *Potter v. Potter* (1937), 224 Wis. 251, 259, 272 N. W. 34, a case involving comparative negligence, the court said:

"We do not regard the foregoing as a circumstance reasonably tending to show that the award was excessive. As heretofore held in *Cameron v. Union Automobile Ins. Co.* [*supra*], the statute, (sec. 331.04 (2) ) *places a limit upon recovery,* but does not constitute a measure of adequate compensation."

In *Schulz v. General Casualty Co., supra,* referring to sec. 331.04, Stats., the court said (p. 127):

"The statute does not measure the amount of compensation, *it only limits it.* [Citing *Cameron v. Union Automobile Ins. Co., supra,* and *Potter v. Potter, supra.*] If a jury exceeds the limit, the court can reduce the allowance to the statutory limit. Courts of other states are cited as holding mention of the statutory limit in death cases proper. [Citing cases.] If they do so hold, we are not bound by their holdings. We do not so consider it, although it is not prejudicial if the assessment of the jury is proper, measured by the correct standard." See also 25 C. J. S., Death, p. 1262, sec. 112.

Under the doctrine of these cases the provision in sec. 331.04 (1) (a), Stats., already set out should be applied as if it read: "The amount recoverable in every such action shall not ex-

ceed the sum of $12,500." Sec. 331.04 (2) should also be so construed. The language found in the statute is almost identical with that found in Lord Campbell's Act, enacted August 26, 1846. (9 & 10 Vict. p. 531.)

The practice which has been followed by the trial courts in submitting comparative-negligence questions need not be disturbed by reason of our holding in this case. The initial error in this case was in the assumption that the provision of secs. 331.04 (1) (a), and 331.04 (2), Stats., was a measure of compensation instead of being as it is, a limit upon the amount recoverable in death actions, aided also by the second assumption that the limit of recovery under the statute should be diminished in proportion to the amount of negligence attributable to the plaintiff. It is to be remembered, as already stated, that the jury's verdict is not complete under the forms ordinarily submitted until the necessary mathematical computation has been made. When that is done the statutory limits contained in sec. 331.04 are to be applied to that amount.

While funeral expenses are recoverable in a proper case they are within, not in addition to, the amounts specified in sec. 331.04, Stats. In *Cochrane v. C. Hennecke Co.* (1925), 186 Wis. 149, 153, 202 N. W. 199, the court said:

"But the amount of such expenses must be included within the limit fixed by the statute, namely, $10,000. To hold otherwise were to hold that a plaintiff might recover the statutory limit and then something in addition. The statutory limit is intended to include all the possible loss that one entitled to recover under the death statute has sustained by reason of the death of the deceased. As a part of such loss funeral expenses are included."

The trial court therefore was in error in adding $200 funeral expenses to $15,000.

*By the Court.*—It is ordered and adjudged that the damages allowed by the jury be reduced to $15,000 and that the

judgment be modified by increasing the amount of recovery to $15,000, plus the costs amounting to $253.14, and that as so modified the judgment is affirmed.

FAIRCHILD, J. *(dissenting in part).* In this case it is held that the negligence of the driver of the truck and of the deceased combined to cause the injury; the contribution of each acted as a factor. In view of that fact I cannot agree that the plaintiff should recover the same amount under sec. 331.04 (1) (a) and (2), Stats., as she would have if deceased had not contributed to the injury which caused his death.

Sec. 331.04 (1) (a) and (2), Stats., which sets the maximum amount of damages in an action for wrongful death provides in part:

"(1) (a) . . . and in every such action the jury may give such damages, not exceeding $12,500, as they may deem fair and just in reference to the pecuniary injury, resulting from such death to the relatives of the deceased specified in this section; . . .

"(2) In addition to the benefits provided for in subsection (1), a sum not exceeding $2,500 for loss of society and companionship shall accrue to the parent or parents or husband or wife of the deceased."

It is clear that there could be no recovery for the wrongful death without the statute. In providing for the cause of action the legislature has also set a maximum amount of damages.

That section of the statutes must be read in the light of sec. 331.045, which provides:

*"Comparative negligence; when bars recovery.* Contributory negligence shall not bar recovery in an action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished by the jury in the proportion to the amount of negligence attributable to the person recovering."

The statutes are not to be treated singly.

The basis for an action in tort is the fault of one party. It is based on the concept that a party should be liable if he is at fault. Originally in order to recover, the plaintiff had to be free of all negligence. It was felt that this was unfair because a plaintiff who was two per cent negligent would have to bear the damage resulting from an injury caused ninety-eight per cent by the defendant's negligence.

Then in 1931 the comparative-negligence statute quoted above was passed. It allowed the plaintiff to recover if his negligence was not as great as that of the defendant; but in keeping with the fault concept it required the amount of the plaintiff's recovery to be reduced by the percentage of his negligence.

When two interpretations can be given to a statute, one reasonable and one not, we must assume that the legislature intended the reasonable one. The majority interpret the phrase "any damages allowed" to mean the full amount allowed by the jury and ignore the restriction as to damages fixed by the statute.

However, the section setting the maximum damages in wrongful-death actions reads: " . . . the jury may give such damages, not exceeding $12,500. . . ." It is clear that the phrase "any damages allowed" can also be interpreted to mean the damages allowed by the statute when those found by the jury exceed that amount. That is the only reasonable interpretation to be given to the statute. When we remember that liability is predicated on fault and recovery is denied or reduced depending on the amount of contributory fault, it is evident that the legislature did not intend the same amount of recovery for a plaintiff whose decedent was ten per cent negligent as for one whose decedent was not negligent at all.

If the majority interpretation is to be the rule, then one who is forty or even forty-nine per cent negligent might recover as much as one who is entirely free from negligence. In

the case before us the decedent could have been forty-nine per cent negligent and still have recovered the full $15,000.

By accepting this new rule we are laying aside a settled practice that has obtained ever since the comparative-negligence law was enacted. I am of the opinion that the result of the new rule will be unnecessary confusion until the legislature takes some action.

In *Schulz v. General Casualty Co.* (1939), 233 Wis. 118, 127, 288 N. W. 803, it is said:

"We do not mean to say that stating the statutory limitation necessarily requires reversal, but we fail to see how in any case such statement can aid the jury in determining the correct amount of compensation to be awarded."

Assuming that in a proper case the trial court does instruct the jury that the damages to be assessed must be between a reasonable minimum and the maximum, would not the jury be compelled to follow the instructions?

I believe that the procedure followed by the trial judge was correct.

FRITZ, J. (*dissenting in part*). I concur in Mr. Justice FAIRCHILD's dissenting opinion and in addition note the following:

In my opinion the court's conclusion that, in an action for the death of a person caused by negligence of a defendant, the damages,—which sec. 331.04, Stats., provides shall not exceed $12,500 for pecuniary injury and $2,500 for loss of society and companionship,—shall not be diminished as prescribed in sec. 331.045, Stats., in proportion to the amount of the causal negligence attributable to the deceased, is not in accord with the provisions in relation to such damages in secs. 331.045 and 331.04(1) (a) and (2), Stats. The words in the provisions in sec. 331.04(1) and (2), that,—

" . . . in every such action the jury may give *such damages, not exceeding $12,500,* as they may deem fair and just

in reference to the pecuniary injury, resulting from such death
. . ." and " . . . not exceeding $2,500 for loss of society and
companionship."

are so plain, unambiguous, and clear that there is no need or
occasion because of which those provisions can be construed or
applied as if they read (as stated in the court's opinion) : "the
amount *recoverable* in every such action shall not exceed the
sum of $12,500." That sum and $2,500 for loss of society,
etc., are the highest amounts at which a jury's *assessment of
damages* for pecuniary injury and for loss of society, etc., can
be sustained. But there is no provision whatever in sec.
331.04 (1) (a) and (2), Stats., as to what amount of such
assessed damages is "recoverable" if there was also contribu-
tory negligence on the part of the deceased person. If there
was such negligence there is applicable and controlling as to
the amount which is *recoverable* the provision in sec. 331.045,
Stats., that if such contributory negligence resulting in
death,—

". . . was not as great as the negligence of the person
against whom *recovery* is sought . . . any *damages allowed*
shall be diminished by the jury in the proportion to the amount
of negligence attributable to the person recovering."

Consequently, in order to determine what amount is *re-
coverable* in such an action, there is applicable to "such dam-
ages," as "the jury may give,"—not exceeding $12,500 for
pecuniary injury and $2,500 for loss of society, etc.,—said
provision in sec. 331.045, Stats., that *"any damages* allowed
shall be *diminished* by the jury in the proportion to the amount
of negligence attributable to" the injured person. In en-
deavoring to proceed in accordance with this provision, since
its enactment in 1931, the trial courts could not,—in view of
the rule that juries should not be informed by the court or coun-
sel as to the effect or consequence of findings in a special ver-
dict, (*Schulz v. General Casualty Co.* 233 Wis. 118, 288 N. W.
803 ; *Hupfer v. National Distilling Co.* 127 Wis. 306, 313, 106

N. W. 831; *Jacoby v. Chicago, M. & St. P. R. Co.* 165 Wis. 610, 622, 161 N. W. 751, 164 N. W. 88),—literally follow the provision that "any damages allowed shall be *diminished by the jury* in the proportion to the amount of negligence attributable to the persons recovering." Instead, in order to achieve the obviously intended purpose of that provision, it has been simpler, more practical, and unobjectionable to have the jury determine the percentages of causal negligence attributable to the respective parties; and then in accordance with such determination have the court diminish the damages assessed by the jury in so far as, in a death case, the amount assessed does not exceed the limitations prescribed in sec. 331.04, Stats. So, by reason of said limitations and in accordance therewith, the *jury's assessment of damages* in this action should be reduced to the permissible amounts. And then by reason of the provisions in sec. 331.045, Stats., in order to determine what amount is recoverable from defendants, the maximum permissible assessment of $15,000 for pecuniary damages and loss of society, etc., should be diminished by ten per cent because of the jury's finding that ten per cent of the total causal negligence was attributable to the deceased.

MARTIN, J., concurs in the dissents.